2023 IL App (2d) 220314-U
No. 2-22-0314
Order filed July 18, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF PAUL J. HERRING, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 15-D-1388 |
| TRACY HERRING, | ) ) ) | Honorable Stephen M. DeRue, |
| Respondent-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Petitioner's petition for reformation of a marital settlement agreement (MSA) based on mutual mistake failed to state a cause of action because petitioner did not allege sufficient facts showing the existence of an agreement that the parties failed to incorporate into the MSA.

¶ 2    Petitioner, Paul J. Herring, filed a petition under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)), seeking to reform the terms of his marital settlement agreement (MSA) with respondent, Tracy Herring, and provide for the division of funds held in college savings accounts established and funded during the parties' marriage for the benefit of the parties' two children. Respondent filed a combined motion to dismiss the petition under

section 2-619.1 of the Code (*id.* § 2-619.1). The trial court granted respondent's motion. Petitioner timely appealed. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On May 30, 2017, the trial court dissolved the parties' 16-year marriage. Two children were born during the marriage: A.H. and S.H. At the time of dissolution, A.H. was 16, and S.H. was 14.

¶ 5     The judgment of dissolution incorporated the parties' MSA. During the marriage—according to the MSA—the parties established and funded a Bright Start account for each child. (There is no dispute that these accounts are college savings plans established under section 529 of the Internal Revenue Code (26 U.S.C. § 529 (2012))). Article V of the MSA addressed the children's "Higher Education Expenses." It contained the following provision regarding the Bright Start accounts (and two additional bank accounts):

"5.3 The parties agree they have the following accounts for the children in the following approximate amounts as of the date of entry of the Judgment for Dissolution of Marriage: A.H. Bright[ ][S]tart account in the amount of $68,815.00; S.H. Bright[ ][S]tart account in the amount of $70,914.00; A.H. Harris bank account in the amount of $3,351.00; and S.H. Harris bank account in the amount of $4,052.00. The parties shall maintain these accounts for the benefit for the minor children and neither party shall remove any funds from these accounts except to pay for the children's college expenses. Both parties shall be entitled to access to these accounts and to see statements for these accounts. These accounts shall be used toward the children's college expenses before either party is required to contribute pursuant to Section 513 [of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/513 (West 2016))]. However, the parties acknowledge and agree that in

the event either party is order[ed] to contribute to the children's college expenses pursuant to Section 513, it is anticipated and contemplated that [petitioner] shall pay the majority of the children's total college expenses."

¶ 6        Section 5.1 of the MSA contained the parties' acknowledgment that "they both have an obligation to pay for the children's college predicated upon the respective abilities to pay, and said costs being allocated pursuant to" section 513 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513 (West 2016)).  It then quoted section 513 of the Act in its entirety.  As is relevant here, subsection 513(g) of the Act (*id.* § 513(g)) provides:

"The authority under this Section to make provision for educational expenses terminates when the child either: fails to maintain a cumulative 'C' grade point average, except in the event of illness or other good cause shown; attains the age of 23; receives a baccalaureate degree; or marries.  A child's enlisting in the armed forces, being incarcerated, or becoming pregnant does not terminate the court's authority to make provisions for the educational expenses for the child under this Section."

¶ 7        On June 28, 2022, petitioner filed a "Motion to Reform" under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2020)), seeking reformation of section 5.3 of the MSA.  (Although the pleading was titled a "motion," we will refer to it as a "petition" because it was brought under section 2-1401 of the Code.)  Petitioner claimed that "[d]uring the course of the parties' marriage, [he] funded with marital monies [the Bright Start accounts,] [of] which [he] is the owner."  He claimed that the terms of section 5.3 of the MSA were based on the parties' "mutual misconception" that both A.H. and S.H. (1) "would attend college on a full-time basis following their graduation[s] from high school" and (2) "maintain a cumulative 'C' grade point average, thereby triggering the parties['] obligation to satisfy post-secondary educational expenses."

Petitioner claimed that, as a result of this "mutual mistake of the parties, the[ ] [MSA] failed to fully memorialize their agreement and provide for the 55/45 division of the remaining funds on deposit in the [Bright Start] accounts upon the termination of their obligations to contribute to post-secondary educational expenses."

¶ 8     Petitioner alleged facts regarding the educational history of the children.  Petitioner alleged that A.H. (1) was 21 years old, (2) graduated high school in May 2019, (3) began college at Carthage College in the 2019 fall semester, (4) failed to maintain a "C" average, (5) dropped out of Carthage College in February 2020, (6) attended College of Lake County (CLC) in the 2020 spring and fall semesters, (7) failed to regularly attend class or take examinations each semester at CLC, (8) attained a 0.00 grade point average at CLC, and (9) has "abandoned advancing his education."  Petitioner attached, as exhibit A, a copy of A.H.'s unofficial transcript from Carthage College and, as exhibit B, a copy of A.H.'s official transcript from CLC.

¶ 9     Petitioner alleged that S.H. (1) graduated high school in May 2020, (2) attended CLC in the 2020 fall semester, (3) failed to maintain a "C" average during the 2020 fall semester, (4) did not attend college in 2021 spring semester, (5) attended Loyola University in the 2021 fall semester, and (6) attained a 1.734 grade point average during the 2021 fall semester.  Petitioner attached, as exhibit C, a copy of S.H.'s official transcript from CLC and, as exhibit D, a copy of S.H.'s unofficial transcript from Loyola University.

¶ 10     In support of his claim for reformation, petitioner noted that under paragraph E of the MSA, "the parties agreed to settle and resolve between them all rights and claims in and to any property." He further noted that under "Article IX of the[ ] [MSA], the parties agreed that all property would be divided 55% to [respondent] and 45% to [petitioner] in accordance with the balance sheet [attached to the MSA] as [e]xhibit 'A'." Petitioner asserted that, because the Bright Start accounts

were listed on that balance sheet, the MSA should be reformed to provide for a corresponding 55/45 division, in respondent's favor, of the Bright Start accounts.

¶ 11   Exhibit A attached to the MSA is titled "*In Re*: The Marriage of Herring—Spreadsheet of [A]ssets" (spreadsheet of assets).  It lists the values of the parties' "Total Cash Accounts/Vehicles," "Total Retir. Accounts/Whole Life Ins. Policies," and "Total Debts," and calculates from those three categories the "Total Value of [the] Marital Estate."  The "Percentage Split of [the] Marital Estate" total is 55% to respondent and 45% to petitioner.  The spreadsheet of assets contains two additional categories, which were not included in the marital estate—one titled "Children's Savings Accounts" and one titled "[Petitioner's] Non-Marital Accounts/Assets."  The category titled "Children's Savings Accounts" includes the two Bright Start accounts and two additional "Harris" accounts.

¶ 12   On July 7, 2022, respondent filed a combined motion to dismiss the petition under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)).  Respondent stated her grounds for dismissal in three separate "counts."  In count I, respondent sought dismissal under section 2-615 of the Code (*id.* § 2-615) for failure to state a claim.

¶ 13   In count II, respondent sought dismissal under section 2-619(a)(4) of the Code (*id.* § 2-619(a)(4)), which allows for dismissal when the claim asserted is barred by a prior judgment.  She argued that petitioner's claim was barred by the language of the MSA, which provided that the Bright Start accounts "shall be used toward the children's college expenses before either party is required to contribute pursuant to Section 513."  She argued that the parties' obligations to contribute under section 513 were separate from the disbursement of funds in the Bright Start accounts, which were a resource for the children regardless of their age or grade point average.  She stated: "The fact that a child may not currently be enrolled in college does not mean that they

will not be in the future, at which point they would be entitled to the funds in the [Bright Start] account[s]."

¶ 14    In count III, respondent sought dismissal under section 2-619(a)(9) of the Code (*id.* § 2-619(a)(9)), which allows for dismissal when the claim is barred by an affirmative matter avoiding the legal effect of or defeating the claim.  Respondent argued that petitioner's claim was barred by (1) section 502(f) of the Act (750 ILCS 5/502(f) (West 2020)), which provides that "[p]roperty provisions of an agreement are never modifiable[,]" and (2) section 513(h) of the Act (*id.* § 513(h)), which provides that an account "under Section 529 of the Internal Revenue Code, or that is some other college savings plan, is to be considered by the court to be a resource of the child[.]"

¶ 15    On August 8, 2022, the trial court conducted a hearing on respondent's combined motion to dismiss.  The record does not contain a transcript from that hearing or an acceptable substitute, such as a bystander's report or agreed statement of facts.  See Ill. S. Ct. R. 323(c), (d) (eff. July 1, 2017).  The written order indicates that the court granted the motion to dismiss "[s]pecifically, [c]ounts II and III."  The order further indicates that it "is a final and appealable order under [Illinois] Supreme Court Rule 304(a) [(eff. Mar. 8, 2016)]."

¶ 16    Petitioner timely appealed.

¶ 17                                    II. ANALYSIS

¶ 18    Petitioner contends that the trial court erred in dismissing his 2-1401 petition (735 ILCS 5/2-1401 (West 2020)), which sought to reform the terms of the MSA and provide for the division of the Bright Start accounts.  Respondent contends that the trial court properly found that dismissal was warranted based on both section 2-619(a)(4) (*id.* § 2-619(a)(4)) and section 2-619(a)(9) (*id.* § 2-619(a)(9)) of the Code, which respondent cited in, respectively, counts II and III of her motion

to dismiss. In addition, respondent asserts that dismissal was warranted on the basis advanced in count I of her motion but not addressed by the trial court: that the petition failed to state a cause of action and must be dismissed under section 2-615 of the Code (*id.* § 2-615)). Without deciding whether dismissal was warranted under section 2-619, we agree with respondent that dismissal was warranted under section 2-615 of the Code because the petition does not allege sufficient facts to state a meritorious claim for reformation of the MSA and thus does not state a claim for relief under section 2-1401.

¶ 19    Section 2-1401(a), (c) of the Code provides a comprehensive statutory mechanism by which a final order or judgment in a civil or criminal case may be vacated or modified more than 30 days, but not more than two years,[1] after its entry. *Id.* § 2-1401(a), (c); *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. Although section 2-1401 allows for some legal challenges, the principal purpose of a section 2-1401 petition is to bring to the attention of the trial court facts that, if known at the time of judgment, would have prevented its entry. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 94 (2006); *In re Marriage of Little*, 2014 IL App (2d) 140373, ¶ 9. To be entitled to relief under a fact-dependent challenge, a section 2-1401 petitioner must affirmatively set forth specific factual allegations supporting (1) the

---

[1]Petitions filed under section 2-1401 are subject to a two-year statute of limitations. 735 ILCS 5/2-1401(c) (West 2020). The petition here was filed more than five years after the judgment of dissolution was entered. However, respondent did not argue below (or on appeal) that the petition should be dismissed as untimely. Accordingly, any such argument has been forfeited. See *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 16 (timeliness is an affirmative defense that can be forfeited).

existence of a meritorious defense or claim, (2) due diligence in presenting the defense or claim, and (3) due diligence in filing the section 2-1401 petition. *Paul*, 223 Ill. 2d at 94; *In re Marriage of Little*, 2014 IL App (2d) 140373, ¶ 9. Moreover, "[t]he petition must be supported by affidavit or other appropriate showing as to matters not of record." 735 ILCS 5/2-1401(b) (West 2020).

¶ 20     Relief is available under section 2-1401 of the Code if a judgment of dissolution incorporating an MSA fails to express the real intention of the parties because of a mutual mistake. See *In re Marriage of Breyley*, 247 Ill. App. 3d 486, 490-91 (1993) (affirming the trial court's grant of ex-husband's 2-1401 petition to vacate portions of the parties' marital settlement agreement that provided for the immediate payment of child support, because the undisputed facts established that the parties had agreed to defer the ex-husband's child support obligation while he attended college). "A mutual mistake is one that is common to the parties such that each labors under the same misconception. In such a case, the parties are in actual agreement, but the instrument to be reformed, in its present form, does not express the parties' real intent." *Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869 (2008).

¶ 21     A claim for reformation "rests on the theory that the parties reached an agreement but then erred somehow (by mutual mistake of fact, or by mistake on one side and fraud on the other) in reducing that agreement to writing, with the result that the writing fails to reflect the parties' agreement." *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 29.

> "To plead a claim for reformation, a plaintiff must allege: '(1) the existence and substance of an agreement between the parties and the identity of the parties to the agreement; (2) that the parties agreed to reduce their agreement to writing; (3) the substance of the written agreement; (4) that a variance exists between the parties' original agreement and the writing; and (5) the basis for reformation (*e.g.*, mutual mistake).' " *Id.*

(quoting *Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton*, 170 Ill. App. 3d 244, 252 (1988)).

¶ 22    Filing a section 2-1401 petition is considered a new proceeding, not a continuation of the old one. *Walters*, 2015 IL 117783, ¶ 31. "As an initial pleading, a section 2-1401 petition is the procedural counterpart of a complaint and subject to all the rules of civil practice that that character implies." *In re Marriage of Little*, 2014 IL App (2d) 140373, ¶ 8. Thus, a section 2-1401 petition may be challenged by a motion to dismiss. See *id.*

¶ 23    Here, respondent sought dismissal of the petition under section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2020)), which permits a party to file a combined motion seeking dismissal under both section 2-615 (*id.* § 2-615) and section 2-619 (*id.* § 2-619) of the Code.

> "A section 2-615 motion attacks the legal sufficiency of the plaintiff's [or petitioner's] claims, while a section 2-619 motion admits the legal sufficiency of the claims but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint [or petition] or established by external submissions, that defeats the action."
> *Aurelius v. State Farm Fire & Casualty Co.*, 384 Ill. App. 3d 969, 972-73 (2008).

Although the trial court dismissed the petition under section 2-619, our review of the trial court's ruling on a combined motion under sections 2-615 and 2-619 is *de novo*, and we may affirm the court's order on any basis appearing in the record. See *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. For the following reasons, we hold that the petition failed to state a cause of action and, therefore, section 2-615 is a sufficient basis for affirmance.

¶ 24    When considering a motion to dismiss a petition under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)), the critical question is whether the allegations of the petition, taken as true and construed in the light most favorable to the petitioner, are sufficient to state a cause of

action upon which relief can be granted. *Lintzeris v. City of Chicago*, 2023 IL 127547, ¶ 18. "Although a section 2-615 motion to dismiss admits all well-pleaded facts as true, it does not admit conclusions of law or factual conclusions that are unsupported by allegations of specific facts." *McLean v. Rockford County Club*, 352 Ill. App. 3d 229, 232 (2004). "If, after disregarding any legal and factual conclusions, the complaint [or petition] does not allege sufficient facts to state a cause of action, the motion to dismiss should be granted." *Id.*

¶ 25    In the petition for reformation, petitioner alleged: "As a result of a mutual mistake of the parties, their [MSA] *failed to fully memorialize their agreement* and provide for the 55/45 division of the remaining funds on deposit in the [Bright Start] accounts upon the termination of their obligations to contribute to post-secondary educational expenses." (Emphasis added.) However, petitioner failed to allege sufficient facts to support the existence of this "agreement." He pointed only to the provisions of the MSA wherein the parties agreed to divide certain marital property 55% to respondent and 45% to petitioner in accordance with the spreadsheet of assets attached to the MSA as exhibit A. He asserted "Both [Bright Start] accounts are listed on [the spreadsheet of assets]." However, a review of the spreadsheet of assets shows that the Bright Start accounts are not included as assets in the "Total Value of [the] Marital Estate." Instead, they are listed separately in a category titled "Children's Savings Accounts," along with additional "Harris" accounts belonging to the children. (We note, too, that "[Petitioner's] Non-Marital Account/Assets," were also expressly excluded from the "Total Value of [the] Marital Estate.") Thus, the inclusion of the Bright Start accounts on the spreadsheet of assets does not support a claim that the parties had any agreement to divide the Bright Start accounts as marital assets under certain circumstances.

¶ 26 Accordingly, because petitioner failed to state a meritorious claim for reformation, he thus failed to state a claim under section 2-1401, and the petition's dismissal was warranted under section 2-615 of the Code. See *Gatreaux*, 2011 IL App (1st) 103482, ¶ 10 (we may affirm the court's order on any basis appearing in the record). Because we conclude that the petition was subject to dismissal under section 2-615, we need not consider whether it was also subject to dismissal under section 2-619.

¶ 27 Finally, we note that petitioner made no argument in the trial court or on appeal (either in his briefs or at oral argument) that, if the trial court or this court agreed with respondent's argument that the petition failed to state a claim, he should be granted leave to amend the petition. In his reply to respondent's argument on appeal that dismissal was warranted under section 2-615, petitioner argued only that his petition "set forth all of the requisite allegations" and that "[n]o other allegations were required to be made." Accordingly, given the absence of any request that he be granted leave to file an amended petition, we do not consider whether affording such relief would be warranted. See *Continental Building Corp. v. Union Oil Co. of California*, 152 Ill. App. 3d 513, 515 (1987) (striking the plaintiff's request for leave to amend its complaint where it was made for the first time in its reply brief on appeal and not requested below).

¶ 28                                  III. CONCLUSION

¶ 29 For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 30 Affirmed.